(Lucas Co., O., Court of Common Pleas.)

THE STATE OF OHIO v. ANNA A. ALLEN et al.

---

*Constitutionaltiy of the Winn Law. (Vol. 91 Ohio Laws, 300.*

Demurrer to petition.

PRATT, J.

The question of the constitutionality of this statute was brought to my attention by demurrer about the time of the decision made by Judge Pugh, 1 Nisi Prius 422, and the demurrer overruled in conformity to that decision and it was then supposed that the question would very soon be reviewed by the Ciruit, and perhaps by the Supreme Court. This not having been done, howeevr, the question is now pressed upon me, upon the ground that the decision of another common pleas judge is not binding, and full brief and argument, with authorities, have been presented to me by counsel for the demurrant, and I have made such examination of the questions inovlved as the pressure of other business has enabled me to make.

The petition in this case is brought, in accordance with the provisions of the statute, against one McAltee, who is charged with being the tenant and occupant of certain premises situate in Toledo, and against the defendant Anna A. Allen, who is charged with being the owner of said premises. It is then charged:

"3. That on the said 1st day of May, 1895, and long prior thereto, and continuously since said date, the said premises, numbered and described as aforesaid, were and are in said neighborhood, generally reputed to be, and were and are in fact, a place where persons of opposite sex were and are accustomed to meet for the purpose of prostitution and illicit copulation, and were and are in fact and in law a house of ill-fame."

There then follows a large number of causes of action, charging sales of intoxicating liquors, in violation of the statute on different days.

Demurrers are filed to this petition, both on behalf of the tenant and occupant, Mrs. McAltee, and also on behalf of the defendant Anna. A. Allen, as the owner.

No brief, or other argument, is furnished on behalf of the first of these, but it is the counsel for the property owner who has filed his brief and urged his position in favor of the owner, against the constitutionality of the statute.

1. The debatable question upon this statute seems to me to arise equally upon each of these demurrers. This is a question as to the construction of the first in connection with the seventh section of the act. The first section of the act provides:

"Sec. 1. Be it enacted by the general Assembly of the State of Ohio, That a building or place generally reputed in the neighborhood where the same is located, to be a building or place where persons of opposite sex meet for the purpose of prostitution is hereby declared to be a house of ill fame."

And the seventh section, providing as to the evidence to be produced upon the trial, reads as follows:

"Section 7. Upon the trial for the recovery of the penalty or of penalties under the provisions of this act, it shall not be necessary to prove any overt act of prostitution in the building, or place alleged in the petition to be a house of ill fame, but it shall be sufficient to show that such building or place is generally reputed in the neighorhood where the same is located, to be a building or place where persons of opposite sex meet for the purpose of prostitution."

The first section. declarative of what shall be considered as a "house of ill fame," is substantially the common law definition of that term. The terms "bawdy house" and "house of ill fame" are synonymous at comomn law. Bouvier's Dictionary defines a bawdy house as follows: "A house of ill fame, kept for the resort and unlawful commerce of lewd people of both sexes," and notes of decisions will be found following this definition, holding, among other things: "It must be reputed of ill fame;" and Bouvier's definition of "house of ill fame" is, that it is "a house resorted to for the purpose of prostitution and lewdness." "Keeping a house of ill fame,"is an offense indictable at common law; and the letting of a house to a woman of ill fame, knowing her to be such, and with intent that it shall be used for the purpose of prostitution, is also an indictible offense at common law. And it was also held at common law that in a prosecution for open and notorious lewdness, it is enough to show that the parties lived together unmarried, and that the fact was generally known throughout the neighborhood. It was also provided by statute, passed in the time of George III, that by reason of the fact that it was difficult to show who was the real owner or keeper of such a house, that any person "who shall appear, act or behave as master or mistress, or as a person having the care, government or management of any bawdy house * * * shall be deemed and taken to be the keeper thereof, and shall be liable to be prosecuted

and punished as such, notwithstanding he or she shall not in fact be the real owner or keeper thereof."

For a full discussion of these matters see Russell on Crimes, Chap. 30, on the subject of Nuisances.

This is sufficient to show that at common law the keeping or letting of a house, with knowledge that it is to be used for such purposes, is indictable, and that the question of reputation of the house in the neighborhood is an important element of evidence upon the trial of such a charge.

It is earnestly contended in this case that this statute makes the proof of reputation conclusive evidence of the charge, and preclude the offering of evidence as to the fact. If this were the necessary construction of the statute. the serious question would be raised, whether this would be within the power of the legislature; and such a contention could be supported by authority.

First, Bishop's New Criminal Law, Sec. 1088, has this, among other statements, bearing upon this question: "The statutes of a few of our States authorize in these cases proof of the reputation of a house in aid of the other proofs, and they are held not to violate our constitutions, though it would be otherwise if they made punishable the mere reputation, regardless of the fact." And this is supported by citations of sundry decisions. There can, however, be, as it seems to me. no doubt whatever as to the authority of the legislature to prescribe that reputation may not be competent evidence. It probably would be such without the statute, but I can see no reason why the statute may not provide, that, in the absence of any other evidence it shall be—in the language of this statute—"sufficient evidence." The statute does not, by its terms, or by any necessary implication, provide that it shall be conclusive evidence, and it would be a violation of all principles governing the construction of statutes to interpolate into the statute, by construction, provisions that would make or create a question as to the constitutionality of the statute.

On the other hand it is elementary that every presumption is in favor of the constitutionality of an act of the legislature, and that the courts will not so construe a law as to create a conflict with the constitution, but will put such an interpretation upon it as to avoid a conflict, if it can be consistently so done, considering the terms of the act and the purposes and intent of the legislature appearing from the whole act.

Judge Pugh. in his opinion in the case of Ohio v. Weston, on page 350, of the 1st Nisi Prius Rrius, has fully discussed this question, and, therefore, without further discussion on my part, I will follow his ruling and hold, that so far as these provisions of the statute are concerned, there is nothing in conflict with the constitution.

II. Counsel in their brief claim that, as against the owner, the act is in violation of the provisions of Sec. 19, of the Bill of Rights in the Ohio Constitution, and Sec. 1, of Article XIV, of the Constitution of the United States.

Sec. 19 provides that "Private property shall ever be held inviolate, but subservient to the public welfare." Sec. 1, Art. XIV of the Constitution of the United States provides: "Nor shall any State deprive any person of life, liberty or property without due process of law." And Sec. 16, of the Bill of Rights of Ohio, provides that every person for an injury done him "shall have a remedy by due process of law." And by Sec. of the Schedule of the Constitution of Ohio, in reference to the sale of intoxicating liquors, it is provided that the General Assembly "may, by law, provide against evils resulting therefrom."

Judge Dickman, in delivering the opinion. of the court in Anderson v. Brewster, 44 Ohio St. 584, makes the following quotation from the opinion of the Supreme Court of Massachusetts, which was reported in 7 Cushing. page 84.

"It is a settled principle," says Chief Justice Shaw, "growing out of the nature of well ordered, civil society, that every holder of property, however absolute and unqualified may be his title, holds is under the implied liability that his use of it may be so regulated that it shall not be injurious to the      *      *      *      rights of the community. Commonwealth v. Alger, 7 Cush. 84."

Notwithstanding the earnestness with which the argument is pressed upon me, that these provisions of the constitution have, in this respect, been violated, as against the owner, it seems to me perfectly clear that this position cannot be sustained.

I see no chance for argument but that the use of property, for the purpose intimated, is injurious to, .or even desructive of the "public welfare," and if this be so, it is within the province of the legislature to provide such remedies as it may deem necessary to prevent such use and protect the public welfare. This may be done, and is done, under what is denominated the police power of the government. "Police power" may be defined as being "That inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort and welfare of society." See note, Tiedeman's Limitations of Police Power, page 3.

But it is claimed, and counsel quote from Tiedeman. page 12, that it is the duty of courts to determine whether any regulation made is a reasonable exercise of this power. Tiedeman says, on page 13: "This would leave to the court only the question of determining what was the proper subject of the exercise of the power;" and, as that is the question to be determined by the court, and the subject is, as in this case, one indictable at common law, such as the keeping of a house of ill fame, and the other, the sale of intoxicating liquors, as to which there not only would be implied power in the legislature without the constitution, but under its provisions, which give express

recognition of the power, as in the case of the sale of intoxicating liquors, there would seem no room for discussion, even under the authority cited, claiming this act as unconstitutional. The question of the necessity of prohibiting the sale of intoxicating liquor in this particular place and as a part of the regulations of such place, would seem to be a matter wholly resting with the legislature. So far as the claim made, that this act is the taking of the property of defendant without compensation, it only need be said that the statute does not provide for the taking of the property, but only provided for its use, and affixes a penalty to be visited against the owner of the property upon the violation of such regulation, and the affixing of such penalty is not done, authorized or permitted to be done without due process of law. The statute itself expressly provides all the protection required by the Constitution of Ohio, or of the United States. The defendant has his "day in open court;" his right to appear and defend; to have a trial by jury and judgment of the court, with all the rights of review of the action of the court and jury provided in any case.

As to the question as to the reasonableness of a police regulation, or the duty of the court to determine as to the reasonableness, although the decisions of the courts may not be entirely in harmony, yet there is an important distinction, not always fully recognized in the statements of text writers or in the opinions of judges, as to the authority under or by which such regulations may be made.

Counsel for defendant in their brief, cite Black's Constitutional Law, page 324. The heading there is "Unreasonable Laws and Unjust Discriminations;" and it will be noticed from the authorized statement of the cases upon which his text is founded, that. I think, with one exception, they are regulations made by municipal ordinances. The general legislative power, as is well known, resides in the legislature of the state, and it is only limited in its power by the constitution; while the power residing in any municipality is derived wholly from the legislature, and is only such as is either expressly or by necessary implication. delegated to it by the legislature.

Again. as appears from the quotations made from Tiedeman, the inquiry by the court is confined to the question whether the regulation is one properly applicable to the subject named. As Black says, page 325, quoting from a New York case: "If it (the legislature), passes an act ostensibly for the public health, and thereby takes away the property of a citizen  *   *   * then it is for the courts to scrutinize the act and see whether it really relates to and is convenient and proper to promote the public health." And, further, on the next page, he states, as a principle, that if a statute purporting to be enacted to protect the public health and public morals "has no real or substantial relation to those ob-

jects, it is the duty of the court to so adjudge;" and he further refers to police regulations which discriminate between different classes of persons made without reference to the character of the individuals.

These same distinctions are made by Tiedeman, in his discussion of Nuisances and their abatement, and are so elementary in their character as not, as it seems to me, to require further comment upon them here, and I only need to refer to the opinion of Judge Pugh, in the Sommerville case, page 422, vol. 1, Nisi Prius Reports.

There is one further question, not fully decided by Judge Pugh, upon which the decision of the Supreme Court, in the case of The State v. Kelly, recently reported in the Bulletin, may have a bearing, but which I deem is still unnecessary for the plaintiff to allege, but that it would arise, if at all, upon the defense to be made by the property owner. It is true that this statute does not require, as an element of the offense, knowledge on the part of the property owner of the fact that his property is so used. The Supreme Court states that as a reason why ignorance of the adulteration of the food, in prosecutions under the statute in reference to such adulterations, constituted no defense; but, whether under this statute the property owner would be precluded from making that defense, I do not decide, nor intend to intimate any opinion I only hold that the allegation of want of knowledge is one not necessary in the petition, and the question would only arise upon the defense.

There was also filed in this and other like case, demurrers, on the ground of misjoinder of causes of action. Counsel in this case have not argued this question, but it was argued in another of these cases, and is therefore decided here.

The statute, by section 5, provides that each separate unlawful act of the sale, etc., shall constitute a cause of action. Code, sec. 5019, provides that the plaintiff may unite several causes of action in the same petition, where they are included in the same transaction or transactions connected with the same subject of action. Section 5020 requires that the causes of action so united must not require different places of trial and must affect all the parties to the action. These provisions of the statute seem to me to be a complete answer to the objection.

The objections urged in argument are:

1. That there can be no joinder of causes not connected with each other; but they are transactions connected with the same subject of action, i. e., the violation of the statute by these defendants in the building named.

2. It is urged that it is against public policy to allow the informer to lie by, permitting continued violations, and thus enhance his own prospective profits. There are two answers to this last objection: (a), The legislature is the judge of the questions as to the furtherance of the public interests,

and the statutes so providing for the union of the actions, it is not the province of the courts to make further inquiry; (b), The State of Ohio is a party, and not the informer, and his motives are not in issue or in any way subject to consideration.

In addition to these considerations, in the case of Railroad v. Cook, 37 Ohio St. 265, several causes of action to recover for penalties, are held to be properly united in the same action. The practice has been, so far as I know, to unite different causes where the recovery is for penalties, without objection.

Both the demurrers in the case will be overruled, and a like entry will be made in all other cases of this character, where the question of the constitutionality of the law only is raised, either upon demurrer of the defendant or the ownerr. I will make the entry in all such cases to which counsel may call my attention.